[No. 22920-0-II.    Division Two.    December 10, 1999.]

STRAKA TRUCKING, INC., *Appellant*, V. THE ESTATE OF
AUGUST JADE PETERSON, ET AL., *Respondents*.

*Charles Scott Sage* of *Valdez & Sage*, for appellant.

*Thomas Avery Brown* of *Brown, Lewis, Janhunen &
Spencer*, for respondents.

MORGAN, J. — The plaintiff's commercial logging truck
was totally destroyed in an accident caused by the defend-
ant's negligence. The plaintiff claimed damages for loss of
use, beginning with the date of the accident and ending

with the date on which the tortfeasor paid for the truck.[1] The trial court granted the defendant's motion for summary judgment. We reverse and remand.

On March 12, 1996, a car driven by August Jade Peterson crossed the center line and collided with a commercial logging truck owned by Straka Trucking, Inc. (hereafter Straka). Peterson was killed, and the logging truck was destroyed.

On March 27, 1996, a representative of Straka met with a representative of Peterson's estate (hereafter Peterson). Peterson offered $17,750 for the truck, plus $2,618 for loss of use from March 12, 1996, to April 1, 1996. Straka refused the offer, saying it would cost more than that to replace the truck.

On June 12, 1996, after further negotiations, Peterson paid $22,000 for the truck, plus $2,618 for loss of use from March 12, 1996 to April 1, 1996. Straka expressly reserved its right to litigate a claim for loss of use attributable to the remainder of the period from accident to payment of the value of the truck (April 1, 1996 to June 12, 1996).

On March 25, 1997, Straka sued on the claim it had reserved. Peterson responded with a motion for summary judgment, arguing that Straka could not recover loss of use because the truck had been destroyed rather than damaged. On January 26, 1998, the trial court granted Peterson's motion. Straka then filed this appeal.

If we apply general tort principles, we cannot hold as a matter of law that Straka is not entitled to loss of use from April 1, 1996 to June 12, 1996. The elements of a negligence claim are duty, breach, proximate cause and damages.[2]

---

[1] In a negotiated partial settlement, the defendant agreed to pay loss of use for the first 19 days after the accident, and the plaintiff reserved its right to claim loss of use for the remainder of the 92 days between accident and payment. For all intents and purposes, then, the claim here is for loss of use from the date of accident to the date of the defendant's payment, with the defendant being entitled to credit for 19 days already paid.

[2] *Hertog v. City of Seattle*, 138 Wn.2d 265, 275, 979 P.2d 400 (1999); *see also Degel v. Majestic Mobile Manor, Inc.*, 129 Wn.2d 43, 48, 914 P.2d 728 (1996); *Hutchins v. 1001 Fourth Ave. Assocs.*, 116 Wn.2d 217, 220, 802 P.2d 1360 (1991).

Neither party disputes that Peterson owed Straka a duty of reasonable care, and that Peterson breached that duty when she crossed the center line. Neither party disputes that Peterson's breach of duty proximately caused the destruction of the truck. Neither party has shown that Straka had the means to replace the truck before Peterson paid for it, or that in the exercise of reasonable care he should have replaced the truck earlier than he did. Neither party has shown that Straka did not lose income that the truck otherwise would have produced.[3]

Modern authorities confirm our application of these general tort principles.[4] A well known text summarizes as follows:

> In general, the plaintiff can almost always recover some measure of damages for a reasonable period of lost use. Loss of use claims are appropriate in the case of private chattels, such as the family car or the pleasure boat. They are also appropriate in the case of commercial animals and equipment of all kinds. . . .
>
> Loss of use may be measured by (1) lost profit, (2) cost of renting a substitute chattel, (3) rental value of the plaintiff's own chattel, or (4) interest.[5]

Moreover:

> The owner who uses a chattel in the production of income is always entitled to claim profits lost when the chattel is unavailable during a reasonable period for repair or *replacement* as a result of tortious *destruction*, damage, or conversion. The

---

[3]*See Young v. Key Pharms.*, 112 Wn.2d 216, 225, 770 P.2d 182 (1989) (party who moves for summary judgment "bears the initial burden of showing the absence of an issue of material fact").

[4]C.C. Marvel, Annotation, *Recovery for Loss of Use of Motor Vehicle Damaged or Destroyed*, 18 A.L.R.3D 497 (1968). *See also* RESTATEMENT (SECOND) OF TORTS § 927 (1979).

[5]DAN B. DOBBS, LAW OF REMEDIES § 5.15(1), at 875 (2d ed. 1993) (citations omitted).

claim may be that inability to use the chattel reduced the plaintiff's income or that it increased his expenses, either way reducing his net profit, which is recoverable if the proof is adequate.[6]

Any such claim is subject to normal requirements on special damages,[7] duplication of damages,[8] and mitigation of damages.[9]

Peterson relies heavily on *McCurdy v. Union Pacific Railroad*.[10] That case, she says, "absolutely control[s]"[11] damages for loss of use and bars *all* such damages whenever property is totally destroyed (rather than merely damaged). We disagree.

In *McCurdy*, a private railroad car was "seriously damage[d]" through the negligence of the Union Pacific Railroad.[12] The evidence did not show whether the car had been totally destroyed. Speaking to that possibility, the Supreme Court said:

> If [on retrial] the jury should find that the car was totally destroyed, then respondent cannot recover for the loss of use, as the measure of damage in such a case is the value of the property destroyed. *Adams v. Bell Motors, Inc.*, 9 La. App. 441, 121 So. 345 [(1928)]; *Helin v. Egger*, 121 Neb. 727, 238 N.W. 364 [(1931)]; *Skinner v. Scott*, 238 La. 868, 116 So. 2d 696 [(1959)].[13] The reason for this rule is that in the recovery of

---

[6]DAN B. DOBBS, LAW OF REMEDIES § 5.15(2), at 876 (2d ed. 1993) (emphasis added).

[7]*Id.* at 877-78.

[8]*Id.* at 878.

[9]*Id.*

[10]*McCurdy v. Union Pac. R.R.*, 68 Wn.2d 457, 413 P.2d 617 (1966).

[11]Resp't's Br. at 4.

[12]*McCurdy*, 68 Wn.2d at 461.

[13]When *McCurdy* was decided, Louisiana law provided that "[o]ne who recovers the full value of a chattel destroyed through the negligence of another cannot recover for the value of the use thereof after same was destroyed." *Skinner v. Scott*, 238 La. 868, 116 So. 2d 696, 699 (1959); *Adams v. Bell Motors, Inc.*, 9 La. App. 441, 121 So. 345, 347 (1931). Since then, Louisiana law has changed. Today,

the full value of the vehicle, as of the date of its destruction, the owner has been made whole.[14]

Speaking to the alternative possibility (i.e., that the private railroad car had been damaged but not destroyed), the Supreme Court said, "If the jury should find that the car could reasonably be repaired, then the owner may recover compensation for the loss of use of the car while the repairs are in progress."[15]

■ *McCurdy* is distinguishable from this case. Although the *McCurdy* court stated that the owner of totally destroyed property may not recover for loss of use, it also stated that "[t]he reason for this rule is that *in the recovery of the full value of the vehicle, as of the date of its destruction*, the owner has been made whole."[16] It appears, then, that the *McCurdy* court focused on the period *after* the tortfeasor's payment; during *that* period loss of use damages accrue when property is merely damaged, but not when property is totally destroyed.[17] In this case, we are

it provides that "where a wrecked vehicle is totally destroyed or repair is not economically feasible, damages for the loss of use of the vehicle are recoverable, but only for a reasonable period of time, i.e., that period in which the owner should become aware of the situation and secure a replacement." *Bunkie Funeral Home, Inc. v. McNutt*, 414 So. 2d 1263, 1270 (La. Ct. App. 1982); *see also Reynaud v. Leonard*, 430 So. 2d 314, 317 (La. Ct. App. 1983).

Similarly, when *McCurdy* was decided, Nebraska law provided that " '[w]hen [an] automobile is totally destroyed, the measure of damages is its reasonable market value immediately before its destruction.' " *Helin v. Egger*, 121 Neb. 727, 238 N.W. 364, 365 (1931) (citation omitted). Since then, Nebraska law has changed. Today, it provides that "[w]here the damage to personal property is such that it cannot be repaired and the property thereby restored to substantially its condition immediately before the damage occurred, or when the reasonable cost of repair exceeds the difference in market value of the property immediately before and immediately after the injury, the measure of damages is the lost market value plus the reasonable value of the loss of use of the property for the reasonable amount of time required to obtain a suitable replacement." *Chlopek v. Schmall*, 224 Neb. 78, 396 N.W.2d 103, 110 (1986).

[14]*McCurdy*, 68 Wn.2d at 469.

[15]*Id.* at 470.

[16]*Id.* at 469 (citation omitted) (emphasis added).

[17]This seems to make sense, at least for the typical case. Once paid, the owner of totally destroyed property can replace it quickly. Once paid, the owner of merely damaged property still needs additional time within which to effect repairs.

concerned with loss of use *before* the tortfeasor pays, or, in alternative terms, with loss of use from the date of the accident to the date on which the tortfeasor pays (or tenders) the full value of the destroyed property.

We conclude that *McCurdy* does not control; that general tort principles do; and that the trial court erred by dismissing, as a matter of law, Straka's loss of use claim. On remand, Straka has the burden of proving the reasonableness of the period of time for which it claims loss of use.[18]

Reversed and remanded.

BRIDGEWATER, C.J., and HUNT, J., concur.

Reconsideration denied January 5, 2000.

---

[18]*See McCurdy*, 68 Wn.2d at 470 ("[t]he reasonableness of the time for which loss of use is to be compensated is as it would appear to an ordinary prudent man under all the circumstances").